UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONRELL D. MURPHY, | No. 2:20-cv-0073 TLN DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| RUDAS, | |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendant failed to provide adequate medical treatment in violation of his Eighth Amendment rights. Presently before the court are the parties' cross motions for summary judgment. (ECF Nos. 30, 41.) For the reasons set forth below the court will recommend that plaintiff's motion be denied, and defendant's motion be granted.

**BACKGROUND**

**I.   Relevant Procedural History**

This action proceeds on plaintiff's first amended complaint. (ECF No. 10.) Upon screening the original complaint, the undersigned determined that plaintiff stated a cognizable deliberate indifference claim against defendant Dr. R. Rudas. (ECF No. 7 at 7-8.) It was also determined that complaint failed to state a claim against defendants Simmons, Martinez, and Betinis. (Id. at 8-9.) Plaintiff was given the opportunity to proceed with the complaint as

1

screened or to file an amended complaint.  (Id. at 9.)  Plaintiff filed an amended complaint.  (ECF No. 10.)  Therein he alleged claims against only defendant Rudas.  The court determined he stated cognizable deliberate indifference and negligent infliction of emotional distress claims.  (ECF No. 11.)  Service of the complaint on defendant Rudas was ordered.

Following service the parties participated in a settlement conference as part of the court's Post-Screening ADR (Alternative Dispute Resolution) Project.  The case did not settle, and the parties proceeded with discovery.  Thereafter, plaintiff filed a motion for summary judgment (ECF No. 30), defendants filed an opposition (ECF No. 45), and plaintiff filed a reply (ECF No. 47).  Defendant also filed a motion for summary judgment (ECF No. 41), plaintiff filed an opposition (ECF No. 48), and defendant filed a reply (ECF No. 50.)

**II.     Allegations in the Complaint**

The events giving rise to the claim occurred while plaintiff was incarcerated at Mule Creek State Prison (MCSP).  (ECF No. 10 at 2.)  Plaintiff alleges that he was involved in an industrial accident on December 12, 2018.  (Id. at 4.)  As a result, he suffered injuries to his neck, back, shoulder, arm, and wrist.  He was transferred to MCSP on January 19, 2019.  It was noted in his initial medical examination that he suffered from persistent and chronic body pain with numbness in his fingers.

Plaintiff claims he was first seen by defendant Dr. Rudas on March 6, 2019.  (Id.)  Notes from the appointment indicate that plaintiff requested an x-ray of his back and left shoulder because of pain from his December 2018 injury.  Plaintiff requested a lower bunk assignment because his injuries prevented him from climbing up and down the top bunk.  Dr. Rudas replied, "I don't do chronos."

Plaintiff submitted a health care grievance on March 14, 2019 stating that he requested and was denied a lower bunk chrono.  (Id.)  The grievance was rejected for failure to use the proper process for seeking medical care and a request for health care service was submitted on plaintiff's behalf.  (Id. at 9.)  He was seen by Dr. Rudas on April 3, 2019.  Plaintiff was diagnosed with chronic lower back pain, chronic neck pain, and impingement syndrome of his left shoulder.

////

Plaintiff made a second request for a lower bunk chrono. Dr. Rudas stated, "I told you I don't do chronos."

On April 15, 2019, plaintiff had another appointment with Dr. Rudas. He was diagnosed with carpal tunnel syndrome and scheduled for a steroid injection. Plaintiff asked for a lower bunk assignment. Dr. Rudas stated, "I'm not going to tell you again, I don't do chronos . . . the higher ups don't want us to do [th]em, so I don't . . . so just ask your celly to switch bunks with you." Plaintiff advised Dr. Rudas that he did not have a celly, but that if he was not in the top bunk during security checks, staff threatened him with rule violation reports.

Plaintiff received a new cell assignment on April 29, 2019. He was again assigned to a top bunk and had a cellmate who was assigned to the bottom bunk. Because he had a cellmate, plaintiff had to sleep in the top bunk all the time. Plaintiff fell from the top bunk on three occasions.

On May 23, 2019, plaintiff was examined by Dr. David Ramos. (Id. at 10.) Ramos noted that plaintiff had difficulty climbing up to and down from the top bunk due to his carpal tunnel syndrome and upper back pain. Ramos assigned plaintiff to a lower bunk.

## MOTIONS FOR SUMMARY JUDGMENT

### I.     The Parties' Motions

#### A. Plaintiff's Motion for Summary Judgment

Plaintiff argues he is entitled to summary judgment because defendant knew plaintiff had a serious injury that impacted his daily activities and failed to take action, specifically ensuring plaintiff had a lower bunk chrono, to prevent further injury. (ECF No. 30 at 5-6.)

In the opposition, defendant argues plaintiff has not provided evidence to support his conclusion that it was medically necessary that he be given a lower bunk designation. (ECF No. 45 at 3.) Additionally, defendant states plaintiff has not provided any testimony regarding the appropriate standard of care to support his negligent infliction of emotional distress claim. (Id. at 4.) Plaintiff argues in the reply that the risk of harm was obvious, negating the need for expert opinion. (ECF No. 47 at 2.)

////

**B. Defendant's Motion for Summary Judgment**

Defendant argues that the undisputed facts show he provided adequate medical treatment to plaintiff and he is entitled to qualified immunity. (ECF No. 41-2 at 7-11.) Defendant further argues he is entitled to summary judgment on plaintiff's negligence claim because plaintiff failed to satisfy the requirements of California's Government Claims Act and the treatment provided was within the appropriate standard of care. (Id. at 13-15.)

**II.     Legal Standards**

**A.  Summary Judgment under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district

court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

5

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

**B. Deliberate Indifference under the Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

////

6

response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See Id. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059;

1  Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**C.  Intentional Infliction of Emotional Distress**

The elements of a negligence cause of action under California law are: "(1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Megargee v. Wittman, 550 F. Supp. 2d 1190, 1209 (E.D. Cal. 2008) (citations omitted). It is a "long-established principle of California negligence law that the reasonableness of a [defendant's] conduct must be determined in light of the totality of the circumstances." Hayes v. County of San Diego, 57 Cal.4th 622, 632 (2013) (citations omitted).

The elements of an intentional infliction of emotional distress claim under California law are: "outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress." Nally v. Grace Community Church of the Valley, 47 Cal. 3d 278, 300 (1988) (citation omitted). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes v. Pair, 46 Cal. 4th 1035, 1050-51 (2009) (citations and quotations omitted). Additionally, "the defendant's conduct must be intended to inflict injury

////

8

or engaged in with the realization that the injury will result." Id. (citation and quotations omitted).

### III. Material Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a) along with their motion for summary judgment. (ECF No. 41-3.)  Plaintiff has also filed a Statement of Undisputed Facts ("PSUF") along with his motion for summary judgment (ECF No. 30 at 8-9), as well as his objections to DSUF (ECF No. 48-1 at 2-17).  Additionally, defendant filed a reply to plaintiff's response to DSUF. (ECF No. 51.)

At all times relevant to the claim, plaintiff was a California Department of Corrections and Rehabilitation ("CDCR") inmate housed at Mule Creek State Prison ("MCSP").  (DSUF (ECF No. 41-3) at ¶ 1; Pl's Compl. (ECF No. 10) at 2.)

The medical issues that gave rise to the allegations in the complaint stem from an injury plaintiff suffered on December 12, 2018. (Pl's Compl. (ECF No. 10) at 4.)  Plaintiff was transported to a hospital for treatment where he was diagnosed with a minor head injury. (Decl. of Feinberg (ECF No. 41-5) at ¶ 9, 10.)  Plaintiff also complained of shoulder pain. (Id. at ¶ 10.)  Exam "indicated that his shoulder was 'not at goal,' but . . . was within normal limits."  (Id.)

#### A. Facts related to Plaintiff's Medical Requests and Visits

Plaintiff began filing Health Care Services Request Forms indicating he was experiencing neck, back, leg, and hip pain in January 2019. (Decl. of Feinberg (ECF No. 41-5) at ¶ 11.)  Plaintiff was seen related to neck, shoulder, arm, back, and wrist injuries on March 6, 2019.  (PSUF (ECF No. 30 at 8) ¶ 1.)  Defendant states that records indicate that plaintiff was seen by Dr. Son, not defendant, on March 6, 2019.  (DSUF (ECF No. 41-3) at ¶ 4.)  Plaintiff maintains that he was seen by defendant on March 6, 2019.  (PSUF (ECF No. 30 at 8-9) ¶ 1.)  Medical records included as exhibits to defendant's motion for summary judgment indicate that plaintiff was seen by non-party Dr. Son on March 6, 2019. (See ECF No. 41-4 at 23-24.)  Plaintiff does not dispute this record and has attached a summary of the March 6, 2019 visit as an exhibit to his motion for summary judgment.  (ECF No. 30 at 11-13.)  Accordingly, the court will not treat this fact as disputed because plaintiff's account is contradicted by the record. Scott v. Harris, 550

U.S. 372, 380 (2007). Moreover, as set forth below, the court's findings would be the same even if plaintiff had been seen by defendant on March 6, 2019.

Plaintiff submitted a Health Care Services Request Form on March 18, 2019 seeking a bottom bunk assignment because it was painful to climb up to an upper bunk. (PSUF (ECF No. 30 at 8) ¶ 2; ECF No. 30 at 36.) On April 3, 2019, plaintiff was seen by defendant and diagnosed with chronic back pain, chronic neck pain, and impingement syndrome in his left shoulder. (PSUF (ECF No. 30 at 9) ¶ 3; DSUF (ECF No. 41-3) ¶ 6.) During the appointment, plaintiff requested a lower bunk chrono because climbing to the upper bunk was painful and causing his injuries to get worse. (PSUF (ECF No. 30 at 9) ¶ 3; DSUF (ECF No. 41-3) ¶ 7.) Defendant prescribed naproxen to treat plaintiff's pain, ordered neck x-rays of plaintiff's left shoulder as well as his cervical and lumbar spines. (DSUF (ECF No. 41-3) at ¶ 8.) X-rays were taken on April 4, 2019. "[T]he results showed no acute fracture, no foreign bodies, and no other abnormalities." (DSUF (ECF No. 41-3) ¶ 11.)

Plaintiff was seen by defendant again on April 15, 2019. (PSUF (ECF No. 30 at 9) ¶ 4; DSUF (ECF No. 41-3) ¶ 12.) Plaintiff was diagnosed with carpal tunnel syndrome of his left wrist and scheduled for steroid injections in his left shoulder. (PSUF (ECF No. 30 at 9) ¶ 4; DSUF (ECF No. 41-3) ¶ 14.) Plaintiff requested a lower bunk chrono telling defendant that climbing to the upper bunk was painful and causing his injuries to get worse. (PSUF (ECF No. 30 at 9) ¶ 4.) They discussed the results of the x-rays and defendant recorded that plaintiff's pain was minimally improved with naproxen. (DSUF (ECF No. 41-3) ¶ 13.) Defendant also diagnosed plaintiff with impingement syndrome of the left shoulder, carpal tunnel syndrome, and ordered a splint for plaintiff's wrist. (DSUF (ECF No. 41-3) ¶ 14.) Finally, defendant scheduled a steroid shot for plaintiff's shoulder and requested that plaintiff be referred to physical therapy. (DSUF (ECF No. 41-3) ¶ 15.) Plaintiff received a steroid injection on April 18, 2019. (DSUF (ECF No. 41-3) ¶ 16.)

Plaintiff submitted Health Care Services Request Forms on May 10, 2019 and May 13, 2019 requesting a lower bunk assignment. (PSUF (ECF No. 30 at 9) ¶ 5; DSUF (ECF No. 41-3) ¶ 17.) He stated that his injuries made it impossible to climb up and get down from the upper

10

bunk.  (PSUF (ECF No. 30 at 9) ¶ 5.)  He further stated that he had fallen from the upper bunk several times.  (ECF no. 30 at 38.)

Plaintiff was seen by Dr. Ramos on May 20, 2019.  (DSUF (ECF No. 41-3) ¶ 18; PSUF (ECF No. 30 at 9) ¶ 6.)  During the appointment Dr. Ramos granted plaintiff's request for a lower bunk chrono.  (Id.)

### B. Facts regarding CDCR's Accommodation Formulary

"California Correctional Health Care Services has a comprehensive accommodation procedure for evaluating accommodation requests, including requests for a lower bunk."  (DSUF (ECF No. 41-3) ¶ 20.)  There is also a Comprehensive Accommodation Formulary that contains guidance regarding which conditions generally require specific accommodations.  (DSUF (ECF No. 41-3) ¶ 21.)  Health care providers "may request a 'non-formulary accommodation' when an inmate does not have a condition listed in the Comprehensive Accommodation Formulary, but the provider believes that a particular accommodation is still appropriate."  (DSUF (ECF No. 41-3) ¶ 22.)  "Records indicate that Dr. Ramos did not believe that Murphy had a condition listed in the Comprehensive Accommodation Formulary for a lower bunk order when he issued a temporary low bunk order in May 2019."  (DSUF (ECF No. 41-3) ¶ 23.)  Ramos issued a "non-formulary" temporary lower bunk order based on his diagnosis of "adhesive capsulitits" formed during the May 20, 2019 appointment.  (DSUF (ECF No. 41-3) ¶ 24.)

### C. Facts related to the Government Claims Program

Plaintiff submitted a Government Claims Program Claim regarding his allegations that defendant violated his rights.  (DSUF (ECF No. 41-3) ¶ 33.)  In the section directing plaintiff to explain the circumstances that led to his damage or injury plaintiff stated, "Said named state agency [sic] and employees delayed and otherwise denied the Claimant [sic] of medical and mental health treatment, and did so with deliberate indifference, intentionally, and or negligently for yhe [sic] purpose of, and the result of causing the infliction of pain and emotional distress."  (DSUF (ECF No. 41-3) ¶ 35.)  In the section directing plaintiff to describe his damage or injury plaintiff stated, he "suffered pain and emotional distrees [sic]."  (DSUF (ECF No. 41-3) at ¶ 36.)
////

11

Plaintiff's Government Claim did not indicate that he had asked for and been denied a lower bunk assignment. (DSUF (ECF No. 41-3) ¶ 37.)

## IV. Analysis

### A. Eighth Amendment Claim

Plaintiff argues his rights were violated by defendant's refusal to grant his request for a lower bunk assignment. (ECF No. 30 at 6.) Defendant argues that a lower bunk assignment was not medically necessary, and denial of a lower bunk assignment was within the range of acceptable treatment. (ECF No. 41-2 at 16.)

In support of his argument, defendant has put forth evidence indicating that defendant's decisions were within the range of acceptable treatment for plaintiff's condition. (ECF No. 41-2 at 13, 15-16.) Defendant's expert states that reasonable physicians faced with plaintiff's condition could differ regarding whether it was necessary to provide plaintiff with a lower bunk assignment. (DSUF (ECF No. 41-3) at ¶ 25.) Plaintiff has not put forth evidence disputing the expert declaration. Rather he argues that it is obvious that defendant's treatment was not adequate because his condition continued to get worse. (ECF No. 48 at 5-6.)

Defendant ordered x-rays, prescribed medication, ordered a splint, scheduled a steroid shot, referred plaintiff for physical therapy. Such actions do not support a finding of deliberate indifference. Plaintiff's belief that he should have received a lower bunk assignment is nothing more than a difference of medical opinion. Franklin v. State of Oregon State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities does not give rise to a § 1983 claim."). Additionally, his allegation that defendant's denial was clearly erroneous because another doctor gave him a lower bunk assignment can also be categorized as a difference of medical opinion. Sanchez, 891 F.2d at 242 ("A difference of medical opinion does not amount to a deliberate indifference to [plaintiff's] serious medical needs."); see also Parnell v. Win, No. 2:18-cv-0220 WBS KJN P, 2020 WL 58292 at *11 (E.D. Cal. Jan. 6, 2020) ("the fact that different doctors . . . provided temporary and/or permanent lower tier/lower bunk chronos does not evidence deliberate indifference).

////

Defendant's expert witness has stated that "[t]he standard of care for shoulder and low back pain is to begin with conservative treatment" and that defendant's treatment was within the standard of care. (ECF No. 41-5 at 8.) Defendant's decision to begin with conservative treatment does not support a finding of deliberate indifference. See Rodriguez v. Cate, 474 Fed. Appx. 614 (9th Cir. 2012) (affirming grant of summary judgment in favor of defendant doctor who pursued a conservative treatment plan because plaintiff's disagreement with medical opinion was not sufficient to constitute deliberate indifference). The court finds that plaintiff has failed to put forth evidence, other than his own opinion, showing that defendant acted with deliberate indifference in denying his request for a lower bunk chrono. Accordingly, defendant is entitled to summary judgment on plaintiff's claim that defendant was deliberately indifferent for failing to issue a lower bunk chrono.

### B. State Law Claim

As set forth above, the court has found that defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim. The court declines to exercise supplemental jurisdiction over plaintiff's state law claim because it has resolved all federal claims over which this court has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction); see also Yearby v. California Dep't of Corr., No. 2:07-cv-2800 KJN P, 2012 WL 812382 at *11 (E.D. Cal. Mar. 9, 2012) (dismissing state law negligence claim and declining to exercise supplemental jurisdiction over plaintiff's state law negligence claim after resolving claims over which court had original jurisdiction); Sylvester v. Alameido, No. 2:10-cv-2380 KJN P, 2012 WL 4038421 at *17 (E.D. Cal. Sept. 12, 2012) (same). The court will recommend that plaintiff's state law claim be dismissed without prejudice. Should the district court adopt the findings and recommendations plaintiff may pursue his claim in state court pursuant to the time limitations set forth in 28 U.S.C. 1367(d).

////

////

////

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 30) be denied; and

2. Defendant's motion for summary judgment (ECF No. 41) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 6, 2021

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil Rights/S/murp0073.xmsj.fr

14